## PEYSER v. UNITED STATES.

District Court, S. D. New York.

Nov. 15, 1944.

Brozan & Holman, of New York City, for plaintiff.

332

John F. X. McGohey, U. S. Atty., of New York City (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for defendant.

LEIBELL, District Judge.

The question presented in this tax suit is this: Did the preferred and common stock of the Madison Mortgage Corporation become worthless in the year 1937 as the plaintiff taxpayer contends, or in the year 1936 as determined by the Commissioner of Internal Revenue? The plaintiff in 1936 and 1937 was the owner of 150 shares of preferred and 150 shares of common stock of the Madison Mortgage Corporation, which had cost the plaintiff $16,500. She took her loss in 1937 when she had other taxable income against which it could be deducted in calculating her net taxable income. The Commissioner disallowed the deduction for 1937 and made an additional assessment of $5,837.13 for that year, which the taxpayer paid either in cash or by credits, plus interest of $940.65, making a total of $6,777.78. A claim for refund in that amount was duly filed. The claim was rejected by the Commissioner and the plaintiff instituted the present suit for the refund of $6,777.78, with interest since the date of payment.

■ Each case of this kind presents essentially an issue of fact—when did the stock actually cease to have any value, i.e., when did it become worthless? The Commissioner of Internal Revenue passes upon this question in the first instance and his determination carries with it a presumption of correctness. The burden is on the taxpayer to prove that the determination was wrong. See, Morton v. Commissioner of Internal Revenue, 7 Cir., 112 F.2d 320, and cases therein cited.

The Madison Mortgage Corporation for a number of years had been engaged in the business of buying and selling real estate mortgages, and servicing mortgages and in operating various real properties in and about suburban New York. In 1936 it had issued and outstanding 70,919 shares of stock, common and preferred, for a total of $732,419.

There were approximately 300 shareholders of the Madison Company's preferred and common stock. The Commissioner's determination as to the year in which a stock becomes worthless affects all the stockholders who may be claiming deductions in their tax returns and is uniformly applied. The ruling may aid some stockholders in taking the deduction in a year in which they had taxable income, but for others the loss may avail them little because they had no taxable income in that year. For the year 1936, plaintiff's Federal income tax return (Ex. A) shows that she had actual income of $46,013.52, against which she took deductions of $12,524.80 interest paid; $2,463.09 taxes paid; $37,661.60 bad debts ascertained to be worthless in 1936, and other deductions of $812.89, which added up to total deductions of $53,462.38, showing a net loss of $7,448.86. Obviously a further deduction of $16,500 for the Madison Mortgage Corporation stock in 1936 would not have saved her any money in taxes.

■■ In the present case we must consider what are the identifiable events that establish when the stock became worthless. Regulation 94 relating to Art. 23(e)–1 of the Revenue Act of 1936. A taxpayer does not have to sell his stock in order to establish the year in which it became worthless. Indeed, if it became definitely worthless in a prior year, the taxpayer's sale of the stock at auction for a nominal sum in a later year would not fix the later year as the year in which the taxpayer could deduct the loss. DeLoss v. Commissioner of Internal Revenue, 2 Cir., 28 F.2d 803. At no time during the years in question were shares of stock of Madison traded in upon any Exchange.

The facts relating to the financial difficulties of Madison Mortgage Corporation are set forth in the stipulation of facts (Ex. 1). Madison filed a petition in reorganization under § 77B, Bankr. Act, 11 U.S.C.A. § 207, in this Court on January 7, 1936. The petition appears to have been prompted by the fact that the Superintendent of Insurance was about to and did obtain an order from the Supreme Court, New York County, for the rehabilitation of the Equitable Mortgage and Title Guarantee Company. The Madison Corporation owned practically all the stock of Equitable, except a few hundred shares held by the directors of Equitable. When Madison filed its petition for reorganization it was in a very precarious financial condition as appears from its balance sheet of January 1, 1936. Madison's main assets were investments in second mortgages to the extent of $282,085.25, and the shares of Equitable carried on Madison's books at $958,742.20. Madison's book assets of $282,035.25 represented an investment in

second mortgages, a large number of which had been pledged by Madison prior to the bankruptcy; as to the rest, the first mortgages on the properties were foreclosed and the equity of the debtor eliminated prior to June 29, 1937, except in a few cases where the trustee of Madison received small sums, totalling $1,319.36. Practically all of these mortgages were in default prior to the institution of the 77B reorganization proceeding.

Madison's Federal tax return for 1934 showed a loss of $301,168 of which $299,187.09 represented bad debts, including $191,026.04 of mortgages wiped out as the result of the foreclosure of prior mortgages. For the year 1935 a loss of $10,912.17 was reported. During the year 1936 while the trustee under § 77B was in possession additional mortgage losses were sustained.

The income and excess profits tax returns of the Equitable Mortgage and Title Guarantee Company for 1934 and 1935 (Exs. D & E) show that the corporation sustained a net loss of $252,907.11 for the calendar year 1934 and $88,756.80 for the year 1935. On January 7, 1936, on application of the Superintendent of Insurance of the State of New York, an Order of Rehabilitation was entered by the New York Supreme Court placing the affairs of the corporation in the hands of the Superintendent of Insurance pursuant to former Article XI of the Insurance Law of the State of New York, Consol.Laws, c. 28. From January 1, 1936, to March 31, 1937, Equitable had an operating loss of $76,106.31.

The stock of Equitable was a common stock of no par value. The directors of Equitable owned 350 shares of its stock. The Madison Corporation owned 39,300 shares of Equitable, of which 38,000 shares had been pledged by Madison with certain banks and individuals as collateral for loans aggregating $307,000. Madison carried on its books its investment in Equitable at $958,742.

Another asset of Madison's, furniture and fixtures, realized $1,854.72, so that as of June 1937 the trustee of Madison had $3,355.58 in cash, with the possible additional salvage from odds and ends of $5,000.

Madison owed $362,930.25 in January 1936, consisting of notes payable to banks and individuals, accounts payable, accrued interest payable and scrip dividends payable. Of that amount $68,662.37 was due Emco Estates and Equitable, both subsidiaries of Madison. The scrip dividends payable amounted to $64,225.50. There was also an unliquidated liability of Madison, as a guarantor on some mortgages sold, for an amount in excess of $50,000.

The taxpayer herein contends that her stock in the Madison Corporation did not become worthless until June 1937 because it was not until that year that a Plan of Reorganization of Madison, under which the stockholders of Madison would receive nothing, was approved by this Court. Even that Plan finally failed and Madison was ordered liquidated in March 1938. The Plan was based on the proposed sale of the Equitable stock owned by Madison, and the prospective purchasers' offer was contingent on a refinancing of Equitable that would be satisfactory to the Superintendent of Insurance and the New York Supreme Court. This never happened.

As an indication of what the prospective purchasers thought the Equitable stock was worth, their offer to the Trustee of Madison amounted to about $1.20 a share and was made January 5, 1937 (note the date). In their written offer the prospective purchasers said that they had been investigating the condition of Equitable for some time—that they had been actively engaged for six months "in the study of problems connected with this company," and had had repeated conferences with the Superintendent and his deputies. They must have concluded in 1936 that the Equitable stock had only a nominal value.

The attorneys for the Trustee of Madison promptly wrote the Superintendent to inquire in detail about the assets and liabilities of Equitable on January 6, 1937, and received a very full reply on January 7, 1937. On February 5, 1937, the Trustee of Madison filed with this Court a Plan for the reorganization of Madison in which he stated: "No provision is made herein for stockholders (other than those who have become creditors as holders of corporate scrip) for the reason that the corporation is insolvent and there is no equity to be distributed to them". It was clear of course from the price of $1.20 per share offered for the stock holdings of Madison in Equitable on January 5, 1937, that Madison's assets would amount to only about 15% of its liabilities. No other offer was received for Madison's stock interest in Equitable, which was ordered liquidated by the New York Supreme Court on February 15, 1938.

From February 27, 1936, the Trustee of Madison carried on no business. Madison had no employees during the years 1936 and 1937. The furniture and fixtures owned by Madison were sold by the trustee on April 10, 1936.

The foregoing recital of the facts relating to Madison Mortgage Corporation and its subsidiary, Equitable Mortgage & Title Guarantee Company, clearly shows that the Madison Mortgage Corporation stock owned by the plaintiff stockholder became worthless in the year 1936. The complaint is dismissed on the merits.

I have made findings of fact and conclusions of law, which are being filed together with this opinion.